UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SCOTT TUBIAK and EDWARD CUELLO,
individually and on behalf of all other persons
similarly situated,

                      Plaintiffs,                      15-cv-5159 (PKC)

            -against-                      MEMORANDUM
                                                    AND ORDER

THE NIELSEN COMPANY (US), LLC and
NIELSEN HOLDINGS N.V.,

                      Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiffs Scott Tubiak and Edward Cuello, on behalf of themselves and others similarly situated, bring claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., (the "FLSA") for unpaid or underpaid overtime compensation. (Dkt. No. 1.) Plaintiffs, current and former field trainers for The Nielsen Company, LLC and Nielsen Holdings, N.V. (collectively, "Nielsen"), move for conditional certification of their FLSA claims as a collective action and seek court-facilitated notice to similarly situated persons. (Dkt. No. 22.) Plaintiffs seek to include in the collective action "all persons who worked for defendants . . . as Field Trainers . . . from July 23, 2012 through February 28, 2014." (Proposed Order (Dkt. No. 22-1.)) For reasons to be explained, the Court grants plaintiffs' motion for conditional certification (Dkt. No. 22) for full-time field trainers, but only with respect to their overtime wage claim for drive time deducted from their total work hours.

BACKGROUND

Defendants operate a marketing research company that, among other things, "tracks the television and media-viewing habits of individual homes across the United States." (Compl. ¶ 7.) Plaintiff Scott Tubiak was employed by the defendants as a field trainer from 2008 to August 2013. (Tubiak Decl. ¶ 2.) Plaintiff Edward Cuello was employed by the defendants as a field trainer from 2012 to February 2014. (Cuello Decl. ¶ 2.) As field trainers, plaintiffs worked primarily from their own home and on the road, traveling to and from customers' homes. (Compl. ¶¶ 3, 5.)

Plaintiffs allege that they regularly worked over forty hours per week, but did not receive proper overtime pay for all of their actual overtime hours. (Id. ¶¶ 1, 14.) They contend that the defendants implemented a policy ("Drive Time Policy") in which they deducted "the (i) first thirty (30) minutes and (ii) last thirty (30) minutes of plaintiffs' daily drive times despite plaintiffs carrying out duties for defendants throughout these time periods." (Id. ¶¶ 1, 15.) In addition, plaintiffs allege that defendants failed to compensate them for work performed "before the first and/or after the last customer visit of each day, including work frequently performed at plaintiffs' homes, and/or during purported meal breaks." (Id. ¶ 15.)

Plaintiffs seek to include in the collective action all field trainers who worked for defendants from July 23, 2012 through February 28, 2014 ("Relevant Time Period").

STANDARD OF REVIEW

The FLSA provides that employees may sue on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). District courts have discretion to implement section 216(b) "'by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Myers v. Hertz Corp., 624 F.3d 537, 554

(2d Cir. 2010) (quoting Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)).  Orders facilitating notice are often referred to as orders "certifying" a collective action.  Damassia v. Duane Reade, Inc., No. 04 cv 8819 (GEL), 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006).

    To determine whether a FLSA collective action should be certified, courts in this Circuit rely on a two stage process.  Myers, 624 F.3d at 554-55.  First, the district court must make an initial determination whether potential opt-in plaintiffs are "similarly situated" to the named plaintiffs.  Id. at 555.  This turns on whether there is a "factual nexus" between the situation of the named plaintiffs and other putative collective action members.  Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007).  The plaintiffs' burden at this initial stage is "minimal," Damassia, 2006 WL 2853971, at *3, requiring only a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  Myers, 624 F.3d at 555 (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  If plaintiffs meet this modest burden, the court conditionally certifies the collective action and authorizes the plaintiffs to notify potential members of the collective action.  Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368-69 (S.D.N.Y. 2007).  Court-authorized notice is preferred because such notice "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action."  Hoffman–La Roche, 493 U.S. at 172.  After discovery is completed, the court engages in the second phase of analysis to determine, on a full record and under a more stringent standard, whether the additional plaintiffs are, in fact, similarly situated.  Myers, 624 F.3d at 555.

    Courts do not need to wait for the commencement of discovery before considering whether to approve a conditional collective action.  Instead, "courts have endorsed the sending of

notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management." Sbarro, 982 F. Supp. at 262.  Where courts have approved conditional collective actions prior to the completion of discovery, they have relied on facts alleged in the complaint and one accompanying affidavit.  See, e.g., Hernandez v. Bare Burger Dio Inc., No. 12 cv 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) ("[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit."); Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., No. 12 cv 265 (PAE), 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012); Cheng Chung Liang v. J.C. Broadway Rest., Inc., No. 12 cv 1054 (TPG), 2013 WL 2284882, at * 1 (S.D.N.Y. May 23, 2013).

DISCUSSION

Plaintiffs, former and current field trainers for Nielsen, seek to include in a collective action "all persons who worked for defendants . . . as Field Trainers . . . from July 23, 2012 through February 28, 2014."  (Proposed Order.)  The Court grants conditional certification to all full-time field trainers who worked for Nielsen during the Relevant Time Period, insofar as they have claims related to Nielsen's Drive Time Policy.  At this preliminary stage, plaintiffs have sufficiently demonstrated that full-time field trainers are similarly situations only with respect to overtime wage claims for drive time deducted from their total work hours.[1]

I.  Plaintiffs' Drive Time Claim

Plaintiffs have submitted sworn declarations asserting that Nielsen's Drive Time Policy worked to deduct up to one hour per day from all field trainers' compensable time for

---

[1] Defendants assert, and plaintiffs do not dispute, that part-time field trainers were always compensated for all of their drive time.  (Ozan Decl. ¶ 10.)  Therefore, part-time field workers are not similarly situated to plaintiffs.

driving time to and from their home offices at the beginning and end of the day.  (Tubiak Decl. ¶¶ 8-9; Cuello Decl. ¶¶ 8, 10.)  A copy of the Drive Time Policy confirms as much, which states that field trainers' "first and last drive time is reduced by 30 minutes to account for a normal commute time to work."  (Pls.' Br., Ex. B.)  Plaintiffs also assert that they knew that the Drive Time Policy applied to all field trainers "through conversations with many Field Trainers who told [them] that the policy was applied to them." (Tubiak Decl. ¶ 10; Cuello Decl. ¶ 11.)  Moreover, plaintiff Cuello attests that he worked in 11 states, and that the Drive Time Policy applied to him in all those states.  (Cuello Decl. ¶¶ 9-10.)

Plaintiffs also submitted an additional affidavit for the first time in its reply from Nathan Murray, a field trainer employed by defendants, which further supports their claim.  Murray attests that he worked in 28 states and that the Drive Time Policy applied to him in all those states.  (Murray Decl. ¶¶ 3, 10.)  Although material submitted for the first time on reply raising new arguments may be stricken, material that amplifies or responds to arguments in the opposition can be considered.  See Toure v. Cent. Parking Sys. of New York, No. 05 cv 5237 (WHP), 2007 WL 2872455, at *2 (S.D.N.Y. Sept. 28, 2007).  However, even without Murray's declaration, plaintiffs have submitted sufficient evidence supporting conditional certification.  Courts have routinely granted conditional certification to a national class where "evidence is presented from multiple employees from multiple locations nationwide."  Amador v. Morgan Stanley & Co. LLC, No. 11 cv 4326 (RJS), 2013 WL 494020, at *9 (S.D.N.Y. Feb. 7, 2013); see also Stevens v. HMSHost Corp., No. 10 cv 3571 (ILG)(VVP), 2012 WL 4801784, at *3 (E.D.N.Y. Oct. 10, 2012) (granting nationwide conditional certification based on testimony from plaintiffs in four states); Ravenell v. Avis Budget Car Rental, LLC, No. 08 cv 2113 (SLT)(ALC), 2010 WL 2921508, at *1 (E.D.N.Y. July 19, 2010) (granting conditional certification based on

declarations of plaintiffs working in three states). Here, conditional certification is warranted based on a plain reading of the Drive Time Policy, as well as plaintiffs' original affidavits, which allege that the Drive Time policy applied in at least 11 states.

Furthermore, in the face of plaintiffs' assertion that the Drive Time Policy applied nationwide, defendants did not directly refute the point. Rather, defendants argue, that it is an "unremarkable policy of not compensating Field Trainers for their normal daily commute," and the policy may be addressed differently across the country by different field trainers. (Defs.' Br. 9.) Their assertion that the policy may have been applied to individual employees differently is inadequate to prevent conditional certification. Damassia, 2006 WL 2853971, at *5. The relevant issue "is not whether Plaintiffs and [potential opt-in plaintiffs] were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week." Raniere v. Citigroup, Inc., No. 11 cv 2448 (RWS), 2011 WL 5881926, at *25 (S.D.N.Y. Nov. 22, 2011).

Defendants also assert that plaintiffs do not state a claim for relief for overtime wages because they worked an average of less than 40 hours per week. (Defs.' Br. 9-10.) The argument is misleading, however, since defendants focus on the average rather than the actual number of hours plaintiffs worked in any given week. 29 U.S.C. § 207(a)(1) ("[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment . . . ."). Plaintiffs' paystubs confirm that plaintiffs accumulated a substantial amount of overtime pay in parts of 2013, even if they ultimately worked less than 40 hours per week on average. (Kurtz Supp. Decl., Ex. A.)

Based on the foregoing, the Court concludes that the Complaint and supporting declarations contain specific allegations establishing a factual nexus between plaintiffs and other full-time field trainers employed by defendants.

II. Plaintiffs' Additional Claims

For their remaining claims, plaintiffs fail to make a sufficient factual showing to meet their "modest" burden on a motion for conditional certification. With respect to their claim for work performed before the first and after the last customer visit of each day, plaintiff Cuello only states that he, "like Nielsen's other Field Trainers . . . began and ended each work day by performing work from my home for Defendants." (Cuello Decl. ¶ 5.) Meanwhile, plaintiff Tubiak asserts that performing "administrative tasks from my home at the beginning of the day . . . was an essential part of my job as a Field Trainer." (Tubiak ¶ 6.) Both plaintiffs' assertions are conclusory and unsupported. Myers, 624 F.3d at 555 ("The 'modest factual showing' cannot be satisfied simply by "unsupported assertions."). Neither plaintiff states that they had personal knowledge of other field trainers' practices of working from home without overtime compensation. Plaintiff Cuello, for example, stated that he believed that he personally "was also not paid for all of the administrative tasks [he] carried out for Defendants from [his] home." (Cuello Decl. ¶ 7.) Unlike the Drive Time Policy, plaintiffs do not offer any specific facts to support their claim that defendants had a policy or plan of not paying plaintiffs for overtime work completed at home at the beginning or end of every day.

With respect to meal breaks, plaintiffs only attest that they themselves regularly did not take their meal breaks due to the demands of their jobs. (Tubiak Decl. ¶ 12; Cuello Decl. ¶ 13). Plaintiffs do not allege that they are aware of other field trainers having to do the same. All plaintiffs provide is a generalized statement that "other Field Trainers also worked overtime hours for Nielsen that were not paid by Defendants as a result of the violations alleged in this

- 7 -

lawsuit." (Cuello Decl. ¶ 14; Tubiak ¶ 13.)  Without more detailed factual allegations, the Court has no basis for concluding that all field trainers worked during their thirty-minute lunch break. "Although plaintiffs' burden at this stage is 'modest,' 'it is not non-existent' and 'certification is not automatic.'" She Jian Guo v. Tommy's Sushi Inc., No. 14 cv 3946 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014) (quoting Romero v. H.B. Auto. Grp., Inc., No. 11 cv 386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012)).

III. <u>Proposed Order for Conditional Certification</u>

In sum, the Court concludes that plaintiffs have made a "modest factual showing" that potential opt-in plaintiffs were the subject of a common policy or plan, insofar as that policy relates to overtime wages for drive time deducted from their total work hours.  Plaintiffs' proposed order conditionally certifying a collective action should be resubmitted to reflect these limitations.  Defendants also object to producing to plaintiffs, within five calendar days, "a computer-readable data file containing the names, addresses, and telephone numbers of the Field Trainers." (Defs.' Br. 19-20.)  The Court will grant the request as to names and addresses, and will consider further relief as to undeliverable mail.  Nielsen has 21 days from the date of this Order to produce the information.

IV. <u>Court-Ordered Notice</u>

Plaintiffs are also directed to revise certain portions of their proposed notice. Plaintiffs shall narrow the language of the proposed notice to clarify that the collective action includes only full-time field trainers for claims related to overtime wages for drive time deducted from their total work hours.  Defendants also object to the proposed notice insofar as it does not "inform [potential claimants] of possible future involvement in the action—for example, they may be required to give a deposition, respond to written discovery, and travel to New York to

testify at trial." (Defs.' Br. 20-21.) Plaintiffs do not object to such language; therefore, the parties shall meet and confer to determine the content of the notice.

V. <u>Statute of Limitations</u>

Lastly, plaintiffs request that the statute of limitations on the field trainers' claims be tolled from July 23, 2015—the date they requested a pre-motion conference to move for certification—to the date the Court decides the motion. The FLSA provides that the statute of limitations continues to run for individual claimants until they file written consent to join the lawsuit. 29 U.S.C. § 256(b). To avoid inequitable circumstances, a district court may toll the limitations period. In deciding whether to equitably toll the limitations period, courts should consider whether "plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief." <u>Jackson v. Bloomberg, L.P.</u>, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (citing <u>Chapman v. ChoiceCare Long Island Term Disability Plan</u>, 288 F.3d 506, 512 (2d Cir. 2002)). The delay required to decide a motion "may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." <u>Yahraes v. Rest. Associates Events Corp.</u>, No. 10 cv 935 (SLT), 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) (citing cases).

Here, plaintiffs have pursued their rights with reasonable diligence warranting the tolling the statute of limitations as of the date of the plaintiffs' request for a pre-motion conference on July 23, 2015. The Court set a briefing schedule, and plaintiffs filed their motion on August 10, 2015. They did not seek any extensions of time to file, and the motion was fully briefed on September 24, 2015. The parties then engaged in settlement negotiations in October and November, which do not appear to have been successful. (Dkt. No. 38-40.) Therefore, the claims of potential class members should not be penalized based on "understandable delays in

rulings." McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012).[2]  Nor will the Court delay deciding whether the equitable tolling doctrine applies to consider the issue on a case-by-case basis.  (Defs.' Br. 19.)  "The Court declines to adopt a piecemeal approach to equitable tolling, which would waste judicial resources, further delay resolution of this action, and contravene the purposes of FLSA."  Jackson, 298 F.R.D. at 171.

CONCLUSION

Plaintiffs' motion for conditional certification (Dkt. No. 22) is granted for full-time field trainers with the limitations described above.  Plaintiffs are directed to submit a revised proposed order conditionally certifying a collective action and a revised proposed notice to potential opt-in plaintiffs within 21 days of the date of this Order.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
        February 25, 2016

---

[2] Tolling the limitations period to the date that plaintiffs' requested leave to file a motion for conditional certification, rather than to the date they actually filed their motion, is warranted based on the Court's individual practices requiring parties to file a pre-motion letter with the Court before filing such a motion.  Individual Practices of Judge P. Kevin Castel, at 4.A.1.